UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:15-CV-00016-JHM

RICHARD L. STANSBURY and                                    PLAINTIFFS
MARY F. STANSBURY

V.

HOPKINS HARDWOODS, INC.                                     DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendant Hopkins Hardwoods, Inc.'s motion for injunctive relief [DN 41]. Hopkins Hardwoods seeks an injunction prohibiting Plaintiffs Richard L. Stansbury and Mary F. Stansbury ("Plaintiffs" or the "Stansburys") from (i) prohibiting Hopkins Hardwoods access to the Lapland Property and (ii) barring or interfering with the timbering operations of Hopkins Hardwoods on the Lapland Property. A preliminary injunction hearing was held on June 10, 2016. Upon request of the Court, the parties submitted post-hearing briefs on issues raised in the Motion and during the hearing [DN 56, 61]. Having been fully briefed and argued, this matter is ripe for decision. For the following reasons, the Motion for a Preliminary Injunction is **GRANTED**.

## I. BACKGROUND

This action centers on the acquisition and harvesting of timber by Hopkins Hardwoods on real property owned by the Stansburys[1] located in Meade County, Kentucky (the "Lapland Property"). Hopkins Hardwoods is engaged in the business of purchasing timber rights from landowners and then harvesting said timber for delivery to its sole customer, its sister company,

---

[1] Although the Stansburys at one time owned the entire 2551.73 acres, it sold 792.77 acres of the property to Yager Family, LLC, by deed dated July 21, 2011. However, the Stansburys reserved the right to harvest the timber from this tract of land for a period of five years.

Dunaway Timber Company, with whom it has timber supply contracts for each property it purchases the timber rights to.  Dunaway Timber operates a stave mill and saw mill and has supply contracts with various customers, one of which is Brown-Forman, to supply barrel tops and barrel staves from the white oak Hopkins Hardwoods provides Dunaway.   While Dunaway Timber is Hopkins Hardwoods' sole customer, Hopkins Hardwoods is not Dunaway Timber's sole supplier, although it is its largest and most reliable supplier.  (See Prelim. Inj. Hr'g Tr., June 10, 2016 [DN 57] 33:11–:20 (Hopkins Hardwoods supplies over 50% of Dunaway Timber's logs).)  Dunaway Timber also contracts with various loggers on an intermittent basis to supply it with logs.  Hopkins Hardwoods supplies a controlled inventory for Dunaway Timber, who generally keeps a 30-day supply inventory of logs; however, currently, due to various factors it has only a seven day supply.  (Id. at 33:9–34:3.)

The Stansburys filed this action on January 20, 2015, asserting that Hopkins Hardwoods fraudulently misrepresented certain facts in purchasing the timber rights from the Stansburys, breached the timber contract, converted property of the Stansburys, tortiously interfered with the Stansburys' prospective business relationship, was unjustly enriched, committed an unlawful trespass, violated KRS 364.130 (intentional unlawful harvesting of timber), and violated the Stansburys' property rights under sections 1 and 2 of the Kentucky Constitution [DN 1].  The Stansburys filed an Amended Complaint on September 2, 2015 [DN 27], in which they asserted the same claims against Hopkins Hardwoods and also added claims against Hopkins Hardwoods, Henry Christ (President and Owner of Hopkins Hardwoods), Don Hayes, and James Speaks for (1) violation of RICO, 18 U.S.C. §§ 1961 et seq., (2) RICO conspiracy, and (3) common law fraud.  Hopkins Hardwoods filed an answer and denied all allegations set forth in the Stansburys' initial Complaint [DN 13] and Amended Complaint [DN 33].

On September 19, 2011, the Stansburys agreed, by written contract, to convey to Hopkins Hardwoods specific property rights for a period of five years, including the right to timber and harvest and remove same, on the Lapland Property, in exchange for two million two hundred thousand dollars ($2,200,000.00) (the "Timber Contract"). Hopkins Hardwoods paid two hundred thousand dollars ($200,000.00) as a down payment at the time of the execution of the contract. Pursuant to the terms of the Timber Contract, the Stansburys executed a timber deed conveying the Lapland timber and rights to remove and harvest same to Hopkins Hardwoods on October 7, 2011 ("Timber Deed").[2] On October 13, 2011, Hopkins Hardwoods executed and agreed to the deed and paid the remaining balance of two million dollars ($2,000,000.00) to the Stansburys. Pursuant to the parties agreement, Hopkins Hardwoods must complete harvesting of the timber by September 19, 2016, five years from the date of entry of the Timber Contract.[3]

The Timber Deed conveys to Hopkins Hardwoods (and its successors and assigns) "timber and rights to remove and harvest the same"—specifically, all timber "not less than 14 inches in diameter at a point not less than one foot from the ground" on Tract I (Timber Deed [DN 1-3] 1), and all timber "not less than 14 inches in diameter at the stump" on Tract II (id. at 2). Pursuant to the Timber Deed, the Stansburys granted Hopkins Hardwoods and its agents "permission to enter upon the lands described herein and to cut and remove said timber from said lands; to have a right-of-way through and across said lands, and to use all necessary wagons, teams, trucks, tractors, skidders, and equipment to haul said timber off said lands." (Id. ¶ 1.) Further, Defendants were "granted the right to remove all timber products manufactured by it

---

[2] The Timber Contract was merged into and superseded by the Timber Deed. (See Timber Deed [DN 1-3] ¶ 11 ("As to the subject timber and rights relating thereto, this timber deed shall supersede and replace any and all prior agreements between the parties, whether written or oral.")). "The merger doctrine provides that upon delivery and acceptance of a deed, the deed extinguishes or supersedes the contract for the conveyance of the realty." Jackson v. Mackin, 277 S.W.3d 626, 628 (Ky. Ct. App. 2009) (citing Drees Co. v. Osburg, 144 S.W.3d 831 (Ky. Ct. App. 2003)).

[3] The deadline for Tract I, the "Yager Tract," is July 21, 2016, whereas the deadline for Tract II is September 19, 2016. (See Timber Deed [DN 1-3].)

and remaining on said lands at the respective expirations of the five-year time periods set forth" in the Timber Deed.  (Id. ¶ 3.)  The Timber Deed requires that Defendant "shall meet or exceed Kentucky State Best Management Practices in its timbering operations on the subject lands," (id. ¶ 4); requires that Defendant "shall return all roads on the subject lands that it uses for timber harvesting to their original condition," (id. ¶ 5); requires that Defendant "shall keep all gates locked when it is not on the subject lands," (id. ¶ 6); and provides that "no cedar is to be harvested," (id. ¶ 7).  Rock from the creek beds on Lapland are not mentioned in the Timber Deed.

According to the testimony of Henry Christ, president of Hopkins Hardwoods, Hopkins Hardwoods began timbering operations on the Lapland Property in January/February 2012. Simultaneously with the filing of this litigation on January 20, 2015, the Stansburys filed a motion for preliminary injunction [DN 4], seeking to enjoin Hopkins Hardwoods and its agents from (a) harvesting any trees that are less than fourteen (14) inches in diameter "at a point not less than one foot from the ground" on Tract I and "at the stump" on Tract II; (b) taking rock from creek beds on Lapland; and (c) harvesting any cedar trees from Lapland, and to direct Hopkins Hardwoods and its agents to take affirmative action to: (a) meet or exceed Kentucky State Best Management practices in timbering operations on Lapland[4] and (b) keep all gates on Lapland locked when Hopkins Hardwoods and its contracts are not on Lapland.

On February 2, 2015, the Court held a preliminary injunction hearing, at which the Court considered the declaration of Plaintiff Richard Stansbury, heard testimony from Hopkins Hardwoods President Henry Christ, and heard arguments of counsel.  Christ testified that the

---

[4] At the preliminary injunction hearing, the Stansburys withdrew their request for injunctive relief regarding the Kentucky State Best Management practices.

only intentional cutting of smaller trees and cedar trees[5] (of which he was aware) was to get to the proper trees to cut and that he believed he had a right to cut down those trees in order to have access to the proper trees.  Christ further testified that it was the practice in the industry to push over or cut over trees in the "right of way."  Regarding the removal of rock from the creek beds, Christ testified that Hopkins Hardwoods used the rock (i) to create a right of way for them and their equipment and (ii) to maintain the roads for Plaintiff (see Timber Deed [DN 1-3] ¶ 5 (Hopkins Hardwoods "shall return all roads on the subject lands that it uses for timber harvesting to their original condition")).

On February 3, 2015, the Court denied the Stansburys' preliminary injunction motion by Order [DN 12], finding that, while at that point the Stansburys were likely to succeed on the merits as to the cutting of trees and the removal of rock from the creek bed, the Stansburys failed to establish they would suffer irreparable injury.  The Court found that any injury regarding the cutting of trees was fully compensable by monetary damages, see KRS 364.130 (providing for computation of monetary damages, based on stumpage value, where one intentionally harvests or causes to be harvested timber without legal right), and that the Stansburys offered no proof of any environmental injury regarding the removal of rock from creek beds.  As to the gates being left unlocked, the Court found that the Stansburys failed to establish a likelihood of success, as Hopkins Hardwoods and its contractors were not in exclusive possession of the Lapland property since 2012.

Since the Court denied the Stansburys' preliminary injunction motion, Hopkins Hardwoods continuously harvested timber from the Lapland Property until May 18, 2016.

On December 21, 2015, the Stansburys' counsel sent a letter to Hopkins Hardwoods' counsel, advising that "[b]ased upon the ongoing and continuing material breaches of the Timber

---

[5] Christ testified that he was aware of two cedar trees being cut down.

Contract dated September 19, 2011, by Hopkins Hardwoods," the Stansburys were "exercis[ing] their rights, under established Kentucky precedent, to abandon said contract, depart from any further performance of the contract on their part and finally demand damages from [Hopkins Hardwoods] for its breaches of the contract." Further, "that all further timbering harvesting operations on the Lapland Property" by Hopkins Hardwoods and its agent be "immediately terminated." (Letter from Harry B. O'Donnell, Counsel for the Stansburys, to Thomas J. Meyer, Counsel for Defendant Hopkins Hardwoods, Dec. 21, 2015 [DN 41-4].) Hopkins Hardwoods continued to harvest timber from the Lapland Property after the December letter.

On May 18, 2016, the Stansburys sent a security guard to the Lapland Property to prevent Hopkins Hardwoods from cutting any further timber or hauling any cut timber from the Property. (See Aff. of John Williams, May 20, 2016 [DN 41-2] ¶ 3.) When the harvesting company retained by Hopkins Hardwoods showed up at the Lapland Property on May 18, a security guard met them and advised that they were to cease operations. (Id.) So as to not breach the peace, Hopkins Hardwoods instructed the harvester to comply with this directive. (Id. ¶ 4.) On May 19, 2016, the Stansburys' counsel sent a letter advising that the Stansburys "retained a private security services company to secure the Lapland Property to enforce the termination of the contract as set forth in [the December 21, 2015] letter." (Letter from Mr. O'Donnel to Mr. Meyer, May 19, 2016 [DN 41-3].)

In its motion, Hopkins Hardwoods asserts that in order to keep the peace, it has temporarily ceased harvesting operations, but notes that the cessation will detrimentally impact Hopkins Hardwoods' business operations. First, Hopkins Hardwoods paid $2,200,000.00 for the timber rights on the Property and it owns that timber. Second, Hopkins Hardwoods must remove all timber by September 19, 2016. It estimates that there are over 100 acres remaining to be

harvested and anticipates harvesting up to the deadline.  Finally, Hopkins Hardwoods supplies Dunaway Timber's inventory, which has been diminished as a result of the wet spring and the inability to harvest.  Hopkins Hardwoods has contracts it must fill with Dunaway Timber, who in turn has contracts it must fill, the main contract being with Brown Foreman to supply white oak barrel tops for bourbon production.  Hopkins Hardwoods represents that if it must cease operations for a long period of time, then it may not be able to meet its contractual obligations, resulting in a substantial loss of revenue, loss of customer contracts, loss of customer good will, and additional damages.

On June 8, 2016, Hopkins Hardwoods filed a motion for leave to file a counterclaim against the Stansburys [DN 53].  On June 17, 2016, Hopkins Hardwoods filed a supplement to its motion for leave to file counterclaim [DN 59], providing a revised Counterclaim [DN 59-1].  In its revised counterclaim, Hopkins Hardwoods asserts claims for (1) conversion, (2) breach of contract, (3) interference with business relationships, (4) unjust enrichment, and (5) punitive damages.  (See Def.'s Countercl. [DN 53-1].)  Hopkins Hardwoods prays for compensatory and punitive damages, interests and costs, and a preliminary injunction and a permanent injunction "to bar [the] Stansbury[s] from preventing Hopkins Hardwoods from accessing the Property to remove its timber from the Property.  (Id. at 7–8.)

## II.   JURISDICTION

During the preliminary injunction hearing, it was brought to the Court's attention that the Stansburys recently relocated to Kentucky and that this might have an impact on the Court's jurisdiction over Hopkins Hardwoods' counterclaims against the Stansburys.[6]  This action was originally brought by the Stansbury's in this Court based on diversity jurisdiction, 28 U.S.C. §

---

[6] The Stansburys did not put on any proof at the hearing, nor is there any evidence in the record, as to whether the Stansburys citizenship or domicile has changed from Texas to Kentucky.

1332.  Diversity jurisdiction requires (1) complete diversity of citizenship (no plaintiff may be a citizen of the same state as any defendant) and (2) that the amount in controversy exceed the sum or value of $75,000.00, exclusive of interests and costs.

The diversity test for jurisdiction is measured at the time that the lawsuit is filed.  Kaiser v. Loomis, 391 F.2d 1007, 1009 (6th Cir. 1968).  At the time the suit was filed, there was complete diversity of citizenship between the parties; the Stansburys were citizens of Texas and Hopkins Hardwoods is incorporated in Kentucky with its principal place of business in Kentucky.  Subsequent events to the filing of the lawsuit, including a party's change in domicile, do not affect a federal district court's jurisdiction in diversity matters.  Smith v. Sperling, 354 U.S. 91, 94 (1957).  "The general rule is that federal jurisdiction is tested according to the facts as they exist at the time an action is initiated and that diversity jurisdiction, once acquired, is not defeated by events occurring subsequent to the commencement of the action."  Television Reception Corp. v. Dunbar, 426 F.2d 174, 177 (6th Cir. 1970).  Therefore, the Court continues to possess subject matter jurisdiction over this matter pursuant based on diversity of citizenship.

### III.   PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an extraordinary remedy that is generally used to preserve the status quo between the parties pending a final determination of the merits of the action.  It is also used, as here, to *restore* the status quo.  In determining whether to issue a preliminary injunction, the Court considers: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction."  Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007) (quoting Tumblebus Inc. v.

Cranmer, 399 F.3d 754, 760 (6th Cir. 2005)).   These four considerations are "factors to be balanced and not prerequisites that must be satisfied."  McNeilly v. Land, 684 F.3d 611, 615 (6th Cir. 2012) (quoting Am. Imaging Servs., Inc. v. Eagle–Picher Indus., Inc. (In re Eagle–Picher Indus., Inc.), 963 F.2d 855, 859 (6th Cir. 1992)).  These factors are to "guide the discretion of the court" and are "not meant to be rigid and unbending requirements."  Id.  Accordingly, it is unnecessary for the Court to make findings regarding each factor if "fewer are dispositive of the issue."  In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir. 1985) (citing United States v. Sch. Dist. of Ferndale, Mich., 577 F.2d 1339, 1352 (6th Cir. 1978)).

"The party seeking the preliminary injunction bears the burden of justifying such relief, including showing irreparable harm and likelihood of success."  McNeilly, 684 F.3d at 615 (citing Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 441 (1974)).  However, a party is not required to prove its case in full at the preliminary injunction stage.  Six Clinics Holding Corp., II v. Cafcomp Sys., Inc., 119 F.3d 393, 400 (6th Cir. 1997) (citing Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)).  Therefore, the findings of fact and conclusions of law of a district court are not binding at a trial on the merits.  Id.

## IV.   DISCUSSION

### A.  Likelihood of Success on the Merits

The Court first considers whether Defendant Hopkins Hardwoods has "demonstrated 'a strong likelihood of success on the merits.'"  Tenke, 511 F.3d at 543 (quoting Tumblebus, 399 F.3d at 760).  To satisfy this burden, a movant is not required to prove its case in full, but must show "more than a mere possibility of success" on the merits; the movant must raise "questions . . . so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and

thus for more deliberate investigation." Id. (quoting Six Clinics Holding Corp. v. Cafcomp Sys., Inc., 119 F.3d 393, 402 (6th Cir. 1997)).

Hopkins Hardwoods contends that the Stansburys' actions—hiring private security to prevent Hopkins Hardwoods from harvesting the remaining one-hundred-plus acres of timber that remains to be cut under the Timber Contract—have caused substantial economic damage to Hopkins Hardwoods as such action deprives it of its rights to property that it owns and reduced its inventory of hardwoods needed to fulfill its contractual obligations. Hopkins Hardwoods asserts that it owns the timber on the Lapland Property that is equal to or larger than 14" in diameter at the stump or 14" in diameter at a point not less than one foot off the ground and the action of the Stansburys—hiring a security firm to police the property and prevent Hopkins Hardwoods from further cutting or harvesting timber therefrom—has deprived Hopkins Hardwoods of its right to the timber that it owns. (See Def.'s Countercl. [DN 59-1] ¶¶ 11–13.) Further, the Stansburys conveyed to Hopkins Hardwoods, by deed executed on October 13, 2011, all timber on the Lapland Property that was equal to or larger than fourteen (14) inches in diameter "at the stump" or "at a point not less than one foot off the ground" and the rights to remove and harvest same. (Timber Deed [DN 1-3] 1–2.) By the deed, the Stansburys granted Hopkins Hardwoods and its agents "permission to enter upon the lands described herein and to cut and remove said timber from said lands; to have a right-of-way through and across said lands, and to use all necessary wagons, teams, trucks, tractors, skidders, and equipment to haul said timber off said lands." (Id. ¶ 1.) Accordingly, the Stansburys' current blockade not only interferes with Hopkins Hardwoods right to the timber Hopkins Hardwoods owns, it violates the parties agreement granting Hopkins Hardwoods ingress and egress for the purpose of harvesting and removing said timber. Under the Erie doctrine, this Court must apply the substantive law of

the forum state (here, Kentucky) in this diversity of citizenship action.   Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

Under Kentucky law, a claim for breach of contract requires the complainant to establish three things: (1) the existence of a contract; (2) breach of that contract; and (3) damages stemming from the breach.   Metro Louisville/Jefferson Cnty. Gov't v. Abma, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009).  Here, the parties do no dispute the existence of a contract.

However, the Stansburys argue the rights that Hopkins Hardwoods are seeking to enforce are contract rights and not property rights under the plain language of the parties' Timber Deed. The Court finds it appropriate to address this argument at the outset.   Counsel for Hopkins Hardwoods argued at preliminary injunction hearing that Hopkins Hardwoods clearly has a property right—they paid $2.2 million in exchange for the timber and the rights to harvest and remove same and therefore they have the right to go and harvest that timber, which they have title to—and that clearly the Stansburys have breached their contract as well, by preventing Hopkins Hardwoods from being on the property.   (See also Def.'s Suppl. Countercl. [DN 59] (asserting rights under the Timber Deed); Timber Deed [DN 1-3] ¶ 1.)  Frankly, the Court does not understand the basis for this argument by the Stansburys.  Regardless, the Deed conveyed title to the timber to Hopkins Hardwoods, and the Court finds that Hopkins Hardwoods clearly has a property right under the Deed and that it is seeking to enforce that right.

Further, the Timber Deed conveys not merely the timber, as the Stansburys assert (see Pls.' Sur-Reply [DN 61] 4–5), but certain "timber and rights to harvest and remove same" on the Lapland Property, (see Timber Deed [DN 1-3] 1, 2, 3).  "Such a right is known as a profit à prendre," Trimble v. Kentucky River Coal Corp., 31 S.W.2d 367, 369 (Ky. 1930), or the shortened "profit," Restatement (Third) of Property (Servitudes) § 1.2 & cmt. f (Am. Law Inst.

2000).  A profit à prendre (French for "right to take"), is "[a] right or privilege to go on another's land and take away something of value from its soil or from the products of its soil (as by mining, logging, or hunting)."  Black's Law Dictionary (10th ed. 2014); see Trimble, 31 S.W.2d at 369.  Profits are "easements plus."  "An easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement," Restatement (Third) Property (Servitudes) § 1.2(1), and "[a] profit is an easement that confers the right to enter and remove timber[, minerals, oil, gas, game, or other substances] from land in the possession of another," id. § 1.2(2).  In Kentucky, the purchaser of such standing timber rights "by his purchase acquires not only a right to go upon the property and take the designated substances, but gets by his purchase the ownership of the substances themselves as they lie in place on, in, or beneath the property."  Trimble, 31 S.W.2d at 369 (adopting the "corporeal rule").  "According to the view this state adopts, these [timber] rights are real estate . . . ."  Id.  Accordingly, the Court rejects the Stansburys' argument that the right Hopkins Hardwoods is seeking to enforce is solely a contractual right and not a property right under the plain language of the Timber Deed between the parties and finds that the Deed passed a valuable property interest to Hopkins Hardwoods, which could not be revoked at the pleasure of the Stansburys.  See Bach v. Little, 131 S.W. 172, 173 (Ky. 1910) (A deed or contract for the sale of standing timber, which grants to the purchaser the privilege of entering on the land at any time within a specified period, here five years, to cut and remove the timber, and the privilege of ingress and egress over the land for that purpose, passes to the purchaser an interest in realty which cannot be revoked at the pleasure of the grantor during the time fixed for removal and the purchaser has five years in which to remove the timber, and the timber not

removed during that period reverts to the grantor or his assigns.); <u>Ream v. Fugate</u>, 97 S.W.2d 11, 14–15 (Ky. 1936) (same).

The Stansburys contend that, while there was a contract between the parties regarding the timber and the rights to harvest and remove same, Hopkins Hardwoods, instead, was the party who breached and that the Stansburys were therefore justified in terminating the contract. <u>See</u> <u>Dalton v. Mullins</u>, 293 S.W.2d 470, 476 (Ky. 1956) ("[T]he party first guilty of a breach of contract cannot complain if the other party thereafter refuses to perform."); <u>O'Bryan v. Mengal Co.</u>, 6 S.W.2d 249, 251 (Ky. 1928) (citations omitted) ("No principle in the law of contracts is better settled than that the breach of an entire and indivisible contract in a material particular excuses further performance by the other party and precludes an action for damages on the unexecuted part of the contract.  In such cases the injured party may consider the contract as ended, himself exonerated from its obligations, and entitled to invoke his remedy for damages."); <u>see also</u> <u>Williamson v. Ingram</u>, 49 S.W.2d 1005, 1006 (Ky. 1932).  The Court disagrees.

 "A party is not automatically excused from the future performance of contract obligations every time the other party commits a breach; if a breach is relatively minor and not of the essence, the plaintiff is still bound by the contract and may not abandon performance and obtain damages for a total breach by the defendant, though the nonbreaching party is entitled to damages caused even by the immaterial breach, albeit that these may be nominal in amount."  23 <u>Williston on Contracts</u> § 63:3 (4th ed.); <u>see</u> <u>Evergreen Land Co. v. Gatti</u>, 554 S.W.2d 862, 865 (Ky. Ct. App. 1977) ("It is elementary that a contract may not be rescinded unless the non-performance, misrepresentation or breach is substantial or material.  The court does not look lightly at rescission, and rescission will not be permitted for a slight or inconsequential breach."); <u>Raley v. Jackson</u>, No. 3:04-0877, 2007 WL 1725254, at *5 (M.D. Tenn. June 12, 2007) (quoting

23 Williston on Contracts § 63:3 (4th ed.)).  However, if the breach is material, the nonbreaching party (1) may treat the contract as at an end, *i.e.,* any duty of counterperformance owed by her will be discharged and (2) will have an immediate right to all remedies for breach of the entire contract, including total damages.  See O'Bryan, 6 S.W.2d at 251.  A breach is minor if the nonbreaching party gains the substantial benefit of her bargain despite the breaching party's defective performance; likewise, if the nonbreaching party does not receive the substantial benefit of her bargain, the breach is considered material.  See In re Rust of Kentucky, Inc., 464 B.R. 748, 762–63 (Bankr. W.D. Ky.), opinion clarified, 465 B.R. 787 (Bankr. W.D. Ky. 2012) (citing Memphis–Shelby County Airport Authority v. Illinois Valley Paving Co., 2006 WL 2715335 (Sept. 22, 2006 W.D. Tenn.) (quoting 23 Williston On Contracts § 63.3 (4th Ed.)) ("A breach is 'material' if a party fails to perform a substantial part of a contract or one or more of its essential terms or conditions, the breach substantially defeats the contract's purpose, or the breach is such that upon a reasonable interpretation of the contract, the parties considered the breach as vital to the existence to the contract.").

The Stansburys characterize this Court's prior Order denying Plaintiff's motion for a preliminary injunction against Hopkins Hardwoods [DN 12] as the Court having determined that "it appears Plaintiffs are likely to succeed on the merits as to the cutting of trees and the removal of rock from the creek bed," (see Order [DN 12] 4), which the Stansburys contend are both breaches of the Timber Contract and Timber Deed by Hopkins Hardwoods, breaches "which were recognized by this Court in the February 3, 2015 Order," (Pls.' Resp. [DN 45] 6).  The Stansburys also note that "[t]he Court did not rule that any of the breaches of contract by Hopkins Hardwoods were insignificant, or did not damage the Plaintiffs."  (Pls.' Resp. [DN 45] 6 (citing Order [DN 12] 4–5).)  There are a few issues with the Stansburys' characterizations.

First, the Stansburys omitted the caveat beginning the quoted language in the prior Order which stated that "*at this point*, it appears Plaintiffs are likely to succeed on the merits . . ." (Order [DN 12] 4 (emphasis added).)   This was not a binding determination by the Court regarding any breach by Hopkins Hardwoods of the Timber Contract and Timber Deed.   See Six Clinics Holding Corp., 119 F.3d at 399–400 (citing Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)) ("[T]he findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits.").   Second, while, as the Stansburys correctly note, the Court did not rule that any alleged breaches of contract by Hopkins Hardwoods were *insignificant*, the Court also did not rule that any alleged breaches of contract by Hopkins Hardwoods were *significant*.   The Court was silent on the matter.   (See also Hr'g Tr. [DN 57] 95:4–:22.)   At this time, the Court does not believe that the alleged undercutting, cutting of two cedar trees, and removal of creek rock amount to a material breach of the contract by Hopkins Hardwoods.   Furthermore, the Stansburys accepted the $2,200,000 from Hopkins Hardwoods, thus receiving the substantial benefit of the bargain.   Accordingly, the Court does not find that the alleged breaches by Hopkins Hardwoods enable the Stansburys to unilaterally terminate the contract and bar Hopkins Hardwoods from the Property to complete its harvesting operations.

By contrast, it appears that the Stansburys have materially breached their agreement when they caused Hopkins Hardwoods to be prevented from exercising its right to enter the Lapland Property and remove the trees to which Hopkins Hardwoods has title.   In effect, the Stansburys failed to perform their duty or obligation of delivering such timber to Hopkins Hardwoods by repudiating or terminating the right of way which the Stansburys had expressly agreed to provide Hopkins Hardwoods, (see Timber Deed [DN 1-3] ¶ 1).   See In re Rust of

Kentucky, 464 B.R. at 762–63.   The essence of the parties agreement was the exchange of $2,200,000 for the standing timber on the Property and rights to harvest and remove same.   The Stansburys' breach is material in that Hopkins Hardwoods has been deprived of the value of the trees on the Stansburys' land to which Hopkins Hardwoods has title and right to (and for which the Stansburys have received adequate consideration).[7]   Accordingly, the Court concludes that Hopkins Hardwoods has shown a strong likelihood of success on the merits of its breach of contract claim.

### B.  Irreparable Injury to Hopkins Hardwoods Absent the Injunction

The next factor the Court considers in deciding whether to grant a preliminary injunction is whether Defendant Hopkins Hardwoods will suffer irreparable injury absent the injunction. Tenke, 511 F.3d at 550.   "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages."   Id. at 550 (quoting Overstreet v. Lexington-Fayette Urban Cnty. Gov't, 305 F.3d 566, 578 (6th Cir. 2002)).   That is, a court of equity will not step in to issue a preliminary injunction if there is "an adequate remedy at law." USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94, 99 (6th Cir. 1982).   "[A]n injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate."   Tenke, 511 F.3d at 550 (quoting Basicomputer Corp. v. Scott, 973 F.2d 507, 511 (6th Cir. 1992)).   "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."   Sampson v. Murray, 415 U.S. 61, 90 (1974)

---

[7] The Court notes that Hopkins Hardwoods has also shown a strong likelihood of success that the Stansburys' blockade of the Lapland Property violates the implied covenant of good faith and fair dealing.  "In every contract, there is an implied covenant of good faith and fair dealing."  Ranier v. Mount Sterling Nat. Bank, 812 S.W.2d 154, 156 (Ky. 1991) (citing 17A Am. Jur. 2d Contracts § 380; KRS 355.1–201).  "A contracting party impliedly obligates himself to cooperate in the performance of his contract and the law will not permit him to take advantage of an obstacle to performance which he has created or which lies within his power to remove."  Gresh v. Waste Servs. of Am., Inc., 738 F. Supp. 2d 702, 710–11 (E.D. Ky. 2010) (quoting Ligon v. Parr, 471 S.W.2d 1, 3 (Ky. 1971)).

(quoting Va. Petroleum Jobbers Ass'n v. Fed. Powers Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958)).  "An 'adequate remedy at law' is a remedy that is plain and complete and as practical and efficient to the ends of justice as the remedy in equity by injunction."  USACO Coal Co., 689 F.2d at 99.

Hopkins Hardwoods contends that it will suffer irreparable harm if the Court does not enjoin the Stansburys' blockade of the Property because, without the timber, Hopkins Hardwoods may be unable to fulfill its supply contracts with its sole customer, Dunaway Timber. Hopkins Hardwoods provides a controlled inventory for Dunaway Timber.  According to Hopkins Hardwoods, Dunaway Timber's current supply of timber will last only about seven days, whereas it normally has a 30-day supply on hand.  (See Hr'g Tr. [DN 57] 33:9–34:3.) Further, Hopkins Hardwoods contends it will suffer irreparable business loss as raw timber is a natural resource that is not readily available and if Hopkins Hardwoods is forced to purchase timber rights at an inflated price in the short-term in an attempt to cover the loss created by the Stansburys' blockade, the net effect will be an artificial inflation of the timber market, which will have lasting impact on Hopkins Hardwoods future purchases of timber rights from other landowners.  Mr. Christ testified at the preliminary injunction hearing that the payment to cover the loss of the remaining Lapland Property, with its high concentration of white oak, will negatively impact Hopkins Hardwoods future business, as it will make Hopkins Hardwoods an unreliable market to loggers/suppliers.  This overall impact of artificially inflating the price will be lasting and is difficult to presently quantify in monetary terms.  Additionally, Hopkins Hardwoods asserts it will suffer irreparable harm in the form of damage to ongoing customer relationships (via Dunaway Timber), loss of customer goodwill (via Dunaway Timber), and loss

of business opportunities, as it will not be able to commit available funds to purchase timber rights on other tracts for other potential opportunities.

The Court concludes that Hopkins Hardwoods will suffer irreparable harm if the Stansburys are permitted to blockade the Property and prevent Hopkins Hardwoods access to the timber to which it has title.  While the Stansburys argue that Hopkins Hardwoods damage is not irreparable as it is fully compensable by monetary damages, "the simple fact that one could, if pressed, compute a money damages award does not always preclude a finding of irreparable harm. As its name implies, the irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address." Celsis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012) (finding that price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm).  "Further, the mere possibility of future monetary damages does not defeat a motion for preliminary injunction." Celsis, 664 F.3d at 930.  Moreover, an injury is not fully compensable by money damages if, like here, the nature of the movant's loss would make damages difficult to calculate.  See Tenke, 511 F.3d at 550.  Here, the impact on Hopkins Hardwoods' business is difficult to presently calculate.  Unlike other markets, the timber market is unique and based on long-term commitments.  If Hopkins Hardwoods raised the price for a short-term need, there is potential loss of good will and damage to reputation when Hopkins Hardwoods later attempts to restore the original price.  The Sixth Circuit has held that an action which puts an in injured party's reputation at risk may lead to "irreparable harm." Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc., 453 F.3d 377, 381–82 (6th Cir. 2006); United States v. Miami University, 294 F.3d 797, 819 (6th Cir. 2002) ("An injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate.  In general, . . . injury to reputation

[is] difficult to calculate.").  Accordingly, the Court finds that the second factor weighs in favor of granting the injunction.

### C.  Possibility of Substantial Harm to Others

The third factor in determining whether to issue a preliminary injunction is "whether the issuance of the injunction would cause substantial harm to others."  Tenke, 511 F.3d at 550–51 (quoting Tumblebus, 399 F.3d at 760).  This factor is most commonly examined in terms of the balance of hardship between the parties, requiring the Court to determine whether the harm that would be suffered by Hopkins Hardwoods if the Court did not grant the injunction outweighs the harm that would be suffered by the Stansburys or others if the injunction is granted.  See Aluminum Workers Int'l Union v. Consol. Aluminum Corp., 696 F.2d 437, 444 (6th Cir. 1982).

Here, the Court is hard-pressed to see how the Stansburys will be harmed by the Court ordering them to comply with the Timber Deed to which they contractually agreed and were paid $2,200,000.00 for in 2011.  Mr. Christ testified at the preliminary injunction hearing regarding the steps Hopkins Hardwoods had taken following the 2015 preliminary injunction hearing to ensure that no undercutting or cutting of cedar trees occurred, and additionally testified that Hopkins Hardwoods no longer removes creek rock.  Thus, the alleged breaches that the Stansburys asserted as the basis for their unilateral attempt to terminate the parties agreement are no longer occurring and have not occurred since before the attempt to terminate.  Moreover, the irreparable harm to Hopkins Hardwoods outweighs any such harm to the Stansburys.  Additionally, there is no indication that a preliminary injunction granting Hopkins Hardwoods access to the Lapland Property and prohibiting the Stansburys' actions to prevent the harvesting of timber would cause any harm to third parties.  Further, Hopkins Hardwoods' sole customer,

sister company Dunaway Timber, will be affected absent the injunction.  Accordingly, the Court finds this factor weighs in favor of Hopkins Hardwoods.

### D.  Public Interest Served by the Injunction

The final factor the Court must evaluate is "whether the public interest would be served by the issuance of the injunction."  Tenke, 511 F.3d at 551.  Hopkins Hardwoods contends that the public interest will be served by discouraging conduct designed to create a public disturbance.  Hopkins Hardwoods asserts that the Stansburys possessed a proper forum in this Court to address their concerns, but instead chose to take the law into their own hands by sending security guards to the Property.  The Court finds that there is no public interest in allowing the Stansburys to interfere with Hopkins Hardwoods' property right regarding the Lapland timber, to breach the parties agreement after having received full consideration, and to breach the implied covenant of good faith and fair dealing in the parties' agreement.  Conversely, enforcement of contractual duties is in the public interest.  Accordingly, the Court finds that this final factor also points toward the issuance of the preliminary injunction.

Upon consideration of all of the relevant factors, the Court concludes that Hopkins Hardwoods has carried its burden of showing that the requested injunctive relief is warranted.

### E.  Bond

Federal Rule of Civil Procedure 65(c) provides that a Court may issue a preliminary injunction "only if the movant gives security in the amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  Despite the mandatory language of the rule, "the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security," if any.  Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins.

Co., 714 F.3d 424, 431 (6th Cir. 2013) (quoting Moltan Co. v. Eagle–Picher Indus., Inc., 55 F.3d 1171, 1176 (6th Cir. 1995)).  For example, "the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the [non-movant] from enjoining his or her conduct."  Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009); see Appalachian Reg'l Healthcare, 714 F.3d at 431 (finding no abuse of discretion where district court found that the non-movant would suffer "little, if any" harm as a result of the requested injunction "due to the face that the preliminary injunction simply require[d the non-movant] to maintain the contractual obligation it voluntarily entered into"); Continental Oil Co. v. Frontier Ref. Co., 338 F.2d 780, 782–83 (10th Cir. 1964) (under Fed. R. Civ. P. 65(c), judge has discretion to waive posting of security in absence of showing likelihood of possible harm).

Hopkins Hardwoods requests that the Court exercise its discretionary power to waive the security requirement of Rule 65(c) because no bond is necessary under the facts of this case.  At the preliminary injunction hearing, the Stansburys argued that if Hopkins Hardwoods breached the parties' agreement, then the Stansburys had a right to terminate the contract.  (Hr'g Tr. [DN 57] 93:17–94:10.)  They accordingly requested a minimum bond amount of $88,000.00, which represents four percent (approximate percentage of the total acres that the remaining untimbered acres equates to) of the contract price of $2.2 million.

Based on the record as well as the evidence and argument presented at the preliminary injunction hearing on June 10, 2016, the Court finds that the Stansburys will suffer "little, if any" harm as a result of the injunction due to the fact that the preliminary injunction simply requires the Stansburys to respect the property interest the Stansburys voluntarily conveyed to Hopkins Hardwoods and the contractual obligation it voluntarily entered into.  Accordingly, the Court, in the exercise of its discretion, will not require a bond.

**F.  Hopkins Hardwoods' Request for Extension of Contract**

In its reply, Hopkins Hardwoods additionally requests that the Court order that the expiration of the Timber Contract and Timber Deed be extended to at least November 30, 2016. Currently, Hopkins Hardwoods' rights to timber the Lapland Property expire on September 19, 2016.  (See Timber Contract [DN 1-2]; Timber Deed [DN 1-3].)  Mr. Christ testified at the preliminary injunction hearing that it would be difficult for Hopkins Hardwoods to cut the timber from the remaining one hundred acres within this time frame.  Hopkins Hardwoods contends that this Court in equity possesses the inherent power to extend the contract given the actions of the Stansbury's in this matter, especially considering their conduct and actions taking the law into their own hands.  The Stansburys did not respond to this request.

In Kentucky, "[i]t is well settled that a sale of standing trees, to be removed from the land within a fixed time in the contract, is a sale of only so many of the trees as are removed within that time, and the vendee who fails to remove the trees purchased by him within the time specified in the contract has no remedy, unless he has been prevented by the act of God or the act of the seller from removing the trees within the specified time.  If he is so prevented, the vendee is entitled to have a reasonable time after the expiration of the time fixed in the contract within which to remove the trees."  Wright v. Cline, 189 S.W. 425, 426 (Ky. 1916) (collecting cases). While this Court recognizes this well-settled rule of Kentucky law, the extension of the contract relief requested by Hopkins Hardwoods seems more appropriate following a final judgment on its claims against the Stansburys rather than by way of a motion for preliminary injunction. Accordingly, the Court declines at this time to grant such relief.

## V.   CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Hopkins Hardwoods' Motion for Preliminary Injunction [DN 41] is **GRANTED**.  The Court will enter a preliminary injunction by separate Order.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

June 23, 2016

cc:     Counsel of Record